Golia, J.,
concurs in part and dissents in part, and votes to reverse the order and grant defendant’s motion for summary judgment in the following memorandum: We all agree that “plaintiff should not have been granted summary judgment.” I regret to say that is where we part company. I dissent as to the reasoning behind the majority’s holding and as to the refusal to grant judgment to the defendant dismissing the complaint.
A careful reading exposes the inaccuracies, misstatements and misunderstandings relied upon by the majority.
The majority presents a two-tiered question. The first question is, does an insurer have the right to demand an independent medical examination (IME) prior to receipt of a formal claim? If so, does the eligible injured person’s failure to attend an IME sought before any claim form has been submitted result in any consequences? My answer to both questions is “yes.”
The majority found that a demand for an IME is permitted pursuant to the mandatory personal injury protection endorsement, which is set forth in the insurance regulations as well as the contract of insurance, and is independent of the verification protocols which are only in the insurance regulations.
Having made the finding that the IME in question does not fall under the verification protocols, the majority then concludes *24 that the failure to attend an IME does not carry any sanctions under the regulations. They do say, however, that it creates an issue of fact sufficient to overcome the presumption of medical necessity and to deny a motion for summary judgment by the eligible injured person or his assignee. Well, that is not the regulation.
Consequently, I disagree with that premise, and their conclusion.
To begin with, 11 NYCRR 65-1.1 (d) provides for the mandatory personal injury protection endorsement. The purpose of this regulation is to mandate the terms of the personal injury protection endorsement that is permitted in automobile insurance contracts in New York State.
Within that regulation is the subheading “Conditions,” which provides: “Action Against Company. No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with the terms of the coverage.” (Emphasis added.)
Within that subheading is the following provision: “The eligible . . . person shall submit to medical examination by physicians selected by, or acceptable to, the Company, when, and as often as, the Company may reasonably require.” (Id.; emphasis added.)
It is abundantly clear to me that if an eligible injured person fails to submit to an independent medical examination, as provided, then the eligible injured person or his assignee cannot prosecute an action against the company. To me this is a simple reading of the regulations. It is not confusing or complex.
There is also a section that is entitled “Claim Procedure” (11 NYCRR 65-3.5) which contains a detailed set of provisions for the filing of claims and for the verification procedure. This section also addresses the request for an IME, but only as the result of the eligible injured person or their assignee filing a demand for payment.
Although the majority makes it appear that a demand for an IME can be requested immediately upon receipt of a formal claim, in fact this is not so. A request for an IME is denominated as “additional verification” and can only be requested after a request for “verification” of a claim and the response thereto has been received.
Specifically, subdivision (a) of 11 NYCRR 65-3.5 provides that the insurer shall forward to the parties required to complete *25 them the “prescribed verification forms” needed prior to payment. Subdivision (b) provides that subsequent to the receipt of the completed verification forms, “any additional verification” required may be requested. IMEs are, in fact, deemed to be “additional verification” (see 11 NYCRR 65-3.4 [c]).
While this is a highly technical and precise reading of the regulations, it is an example of the majority’s restrictive interpretations of the regulations.
While the holding of the majority results in a plenary trial on the issue of lack of medical necessity, the insurer will have no evidence to present on the issue of “medical necessity,” as the eligible injured person never appeared for the IME and consequently the company never examined that person. The eligible injured person would not be entitled to summary judgment but the insurer has no possibility to defend at trial. This, of course, ignores 11 NYCRR 65-1.1 (d) which provides that “[n]o action shall he against the Company . . . .”
In my opinion, the mandatory personal injury protection endorsement conditions the right to commence an action against the insurer upon an eligible injured person’s compliance with the terms of coverage. Where an eligible injured person fails to submit to a reasonably requested IME, the insurance policy, by its terms, as provided by the insurance regulations, affords no coverage for the otherwise eligible injured person (see e.g. Orr v Continental Cas. Co., 205 AD2d 599 [1994] [breach of a condition precedent in an insurance contract permits the insurer to declare the contract terminated due to the breach]). In other words, the assertion by an insurer that the eligible injured person failed to comply with a reasonable request for an IME at the preclaim form stage, which was not opposed or adequately refuted, constitutes a complete defense to the claim warranting dismissal of the action (see e.g. St. Vincent’s Hosp. of Richmond v American Tr. Ins. Co., 299 AD2d 338 [2002]). Indeed, to hold, as does the majority, that the mandatory personal injury protection endorsement requires an eligible injured person to submit to a reasonably requested IME, but that the failure or refusal to submit to such an IME does not bar coverage under the insurance policy is inconsistent as noted earlier. Having determined that the mandatory personal injury protection endorsement obligates eligible injured persons to submit to reasonably requested IMEs, the majority offers no good reason for failing to give effect to the provision which expressly conditions coverage upon the eligible injured person submitting to a reasonably requested IME.
*26 To the extent the majority suggests that its holding is governed by the Appellate Term’s opinion in Millennium Med. Diagnostics v Liberty Mut. Ins. Co. (2001 NY Slip Op 40654[U] [App Term, 2d & 11th Jud Dists 2001], affd 306 AD2d 388 [2003]), I note that I was not a member of the panel which decided said case. Nor was I member of the panels which also decided the Park Health Ctr. v Liberty Mut. Ins. Co. (191 Misc 2d 91 [App Term, 2d & 11th Jud Dists 2001]) and Urban Med. Diagnostics v Liberty Mut. Ins. Co. (2001 NY Slip Op 40655[U] [App Term, 2d & 11th Jud Dists 2001]) cases which were decided the same day as the Millennium Med. Diagnostics case and which employed the same analysis. In said cases, those courts properly held that an insurer was entitled to an IME which was sought prior to the submission of claim forms; however, those courts then mistakenly failed in the aforementioned cases, as it also does in the instant case, to hold that the unexcused nonappearance of an eligible injured person for a reasonably requested preclaim stage IME bars coverage. In light of my analysis set forth herein and the rapid increase in the number of no-fault claims tainted by fraud (see Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d 854, 861 [2003]), it is my hope that the Appellate Division would reconsider the position it adopted in the Millennium Med. Diagnostics case and, in the future, award summary judgment to similarly situated insurers if there was no reasonable excuse for the eligible injured person’s failure to appear at a reasonably and properly requested preclaim stage IME.
Although the majority declares that the failure of an eligible injured person to appear for a reasonably requested IME shall have consequences, the consequences adopted by the majority fall far short of barring an action against the insurer. Rather, if an insurer satisfies its obligation to timely and properly deny a claim for payment, based upon, at a minimum, the nonattendance of the eligible injured person at a reasonably requested IME, and establishes such fact by presenting sufficient evidence upon a motion for summary judgment, the majority will merely deem the presumption of a prima facie case of medical necessity which flows from the eligible injured person’s presentation of properly completed claim forms (see Amaze Med. Supply v Eagle Ins. Co., 2 Misc 3d 128[A], 2003 NY Slip Op 51701[U] [App Term, 2d & 11th Jud Dists 2003]) to have been rebutted. As noted in the majority’s opinion, in such a situation, the eligible injured person, or his or her assignee, may only prevail if suf *27 ficient evidence is proffered to demonstrate that the health benefits provided to the eligible injured person, and for which payment is being sought, was medically necessary. As stated earlier, this would be impossible for the insurer to defend because there was no medical examination of the eligible injured person upon which to rely.
Notwithstanding the fact that it is becoming apparent to the courts, law enforcement agencies and the media that many people are engaged in fraudulent criminal activity so as to obtain money to which they are not entitled for treatment which was never rendered and that such activity adds to the costs borne by law abiding citizens (see Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d at 861; Jail Officers in Crash Scams, New York Post, Sept. 29, 2004; DA: Queens Clinics Filed $1 Million in Fake Claims, NYLJ, Sept. 23, 2004, at 4, col 5; DA: Queens Clinics Filed $1 Million in Fake Claims, Newsday, Sept. 23, 2004), the majority is willing to, in effect, overlook the failure or perhaps the refusal of an eligible injured person to submit to a reasonably requested IME. Under the majority’s position, however, an insurer will never be able to obtain summary judgment dismissing an action based solely upon the failure of an eligible injured person to submit to a reasonably requested IME. This is so notwithstanding the fact that the eligible injured person thwarts the insurer’s ability to establish a defense to the action, to wit, a lack of medical necessity which could be established through a medical examination conducted when such examination might yield the most pertinent information relevant to such issue at an earlier stage. Indeed, a medical examination conducted after submission of the claim form as additional verification (see 11 NYCRR 65.15 [d] [3], now 11 NYCRR 65-3.5 [d]) often only occurs after the treatment is complete and the injury has been resolved.
In sum, while the “primary aims of [the no-fault] system were to ensure prompt compensation for losses incurred by accident victims without regard to fault or negligence, to reduce the burden on the courts and to provide substantial premium savings to New York motorists” (Matter of Medical Socy. of State of N.Y. v Serio, 100 NY2d at 860), at least two of its three goals have not been achieved. Moreover, although the no-fault system contains relatively quick deadlines to ensure the prompt resolution of claims, in the instant case, the majority’s willingness to, in effect, overlook the failure or refusal of an eligible injured person to submit to a reasonably requested independent *28 medical examination thwarts attempts by insurers to investigate claims faster and inhibits insurers’ efforts to ascertain whether the eligible injured person is genuinely injured or is a participant in a criminal scheme.
As a result, while I agree that plaintiff is not entitled to summary judgment, I would grant defendant’s motion for summary judgment dismissing the action.
Aronin, J.E, and Patterson, J., concur; Golia, J., concurs in part and dissents in part in a separate memorandum.